UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FARMLIND PRODUCE, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SICKLES MARKET, LLC, et al., <br><br> Defendants. | Civil Action No. 24-3746 (RK) (RLS) <br><br> **MEMORANDUM ORDER** |

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon an Application for a Temporary Restraining Order ("TRO") Without Notice, (ECF No. 1-4 ("TRO")), filed by Plaintiffs Farmlind Produce, LLC and Four Seasons Produce, Inc. ("Plaintiffs") pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a. In addition to reviewing the written submissions provided in support of the Application, the Court conducted a hearing on the record on March 20, 2024. For the reasons set forth below, Plaintiffs' Application for a TRO is **GRANTED**.

I.    **BACKGROUND**

    a.  **PACA**

    Congress enacted PACA "to promote fair trading practices in the produce industry." *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 135 (3d Cir. 2000) (citation omitted). Under PACA, all "perishable agricultural commodities, inventories of food or other derivative products, and any receivables or proceeds from the sale of such commodities or products, are to be held in a non-segregated floating trust for the benefit of unpaid sellers." *Id.* at 136; *see also* 7 U.S.C. § 499e(c). A PACA trust "is created by operation of law upon the purchase

of such goods, and the produce buyer is the statutory trustee." *Tanimura*, 222 F.3d at 136. "To protect the assets of the trust, the unpaid supplier must give the trustee written notice of intent to preserve the trust within thirty calendar days after payment was due . . . Alternatively, the unpaid seller may provide notice of intent through its ordinary and usual billing or invoice statements." *Id.* (citing 7 U.S.C. § 499e(c)(4)).

A buyer or trustee violates PACA if it fails to maintain the PACA trust or fails to "make full payment promptly" to the seller or trust beneficiary. 7 U.S.C. § 499b(4). Buyers are also "required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities"—any act of omission inconsistent with this responsibility, including dissipation of trust assets, is prohibited. 7 C.F.R. § 46.46(d)(l). Dissipation of trust assets is defined as any act or omission that could result in the diversion of trust assets or the impairment of a seller's ability to recover money owed. *Id.* at § 46.46(b)(2).

**b. Factual Background**

Plaintiffs are two companies engaged in the business of selling wholesale perishable agricultural commodities (produce) and are licensed as such under PACA. (ECF No. 1 ("Compl.") ¶ 3.) Defendants Sickles Market, LLC ("Sickles Market"), Sickles Provisions, LLC ("Sickles Provisions"), and Sickles Management, Inc. ("Sickles Management") are engaged in the business of buying and selling produce in interstate commerce and are also licensed as such under PACA. (*Id.* ¶ 4.) Defendant Robert Sickles is a principal and member of Sickles Market and Sickles Provisions, is a principal and officer of Sickles Management, and occupied a position of control over the PACA trust assets belonging to Plaintiffs. (*Id.*)

2

Between October 2023 and January 2024, Plaintiffs sold produce worth $275,725.47 to Sickles Market and worth $22,985.47to Sickles Provisions. (*Id.* ¶¶ 5–7.) Defendants accepted the produce totaling the aggregate amount of $298,710.94. (*Id.* ¶ 8.) Thus, Plaintiffs became beneficiaries of a statutory trust under PACA (the "PACA trust"). (*Id.*) Plaintiffs submitted invoices to Defendants providing notice of intent to preserve PACA trust benefits. (*Id.* ¶ 9.) The deadlines to pay for the produce have expired, but Sickles Market and Sickles Provisions have failed to pay the principal debt that remains due and owing despite repeated demands by Plaintiffs. (*Id.* ¶ 12.)

Defendant Sickles Market tendered three (3) Non-Sufficient Funds ("NSF") checks to Four Seasons. (TRO at 2, 7.) Both Sickles Market and Sickles Provisions have admitted their PACA trust debt due to Farmlind and Four Seasons and the aggregate $298,710.94 principal amount of that debt. (*Id.* at 15.) Most recently, both Sickles Market and Sickles Provisions have abruptly ceased operations, and on March 11, 2024, Defendant Robert Sickles admitted that they lacked the funds to pay the debt due and needed to "reorganize." (*Id.* at 2, 7, 16.)

II.     **LEGAL STANDARD**

Federal Rule of Civil Procedure 65(b) provides that a TRO may issue without notice to the opposing party when: (A) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and (B) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(A)–(B). Rule 65 also provides that a TRO issued without notice must "state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record." R. at (b)(2).

Under Rule 65, TROs expire after fourteen (14) days, unless extended for good case. R. at (b)(2). When TROs are issued without notice, the subsequent motion for a preliminary injunction must be set for hearing at the earliest possible time. R. at (b)(3). Moreover, on two (2) days' notice to the party who obtained the TRO without notice, the adverse party may appear and move to dissolve or modify the order—such motion must be heard and decided "as promptly as justice requires." R. at (b)(4).

### III. DISCUSSION

With respect to the requirements of Rule 65, Plaintiffs submitted two declarations, an attorney certification, and verified a Complaint with facts demonstrating irreparable harm as required by subsection (A). (ECF No 1-2, 1-3, 1-5; *see also* Compl.) As to subsection (B), Plaintiffs' counsel submitted a certification that "providing advance notice to Defendants of this application would unjustly enable Defendants or their representatives to further dissipate PACA trust assets and would, therefore, irreparably injure plaintiff." (ECF No. 1-5 ¶ 6); *see Ryeco, LLC v. Hurst Produce & Flowers Corp.*, No. 23-3380, 2023 WL 5822207, at *3 (E.D. Pa. Sept. 8, 2023) ("Plaintiffs have satisfied the additional requirement for a TRO without notice. Generally, they argue, and the Court agrees, that advising Defendants of the pendency of this motion will further enable dissipation of the trust by permitting Defendants to pay non-trust debts with the monies.").

Next, the Court turns to the TRO factors. A court asked to enter a TRO considers the following four factors: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). The party seeking a TRO must establish the first two threshold factors, at which point the court balances all four factors. *See Reilly v. City of*

*Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), as amended (June 26, 2017). All four elements required for a TRO are satisfied here.

First, Plaintiffs are likely to succeed on the merits. Plaintiffs and Defendants appear to be licensed under PACA, the debt due and owing to Plaintiffs is undisputed, and Plaintiffs gave notice of their intent to preserve their rights to the PACA trust by providing Defendants with ordinary invoice statements. *See Ryeco*, 2023 WL 5822207 at *2; *Circus Fruits Wholesale Corp. v. Farmer Joen Produce Corp.*, No. 17-1812, 2017 WL 1397950, at *2 (D.N.J. Apr. 18, 2017) (likelihood of success on the merits demonstrated when defendants accepted produce and there is no dispute that the debt is due and owing).

Second, Plaintiffs have demonstrated that they will be irreparably harmed if a TRO does not issue. The Third Circuit has held that "the dissipation of PACA trust assets can render money damages inadequate, thereby necessitating equitable relief, especially when the dissipation will clearly result in the debtor's inability to make payment." *Tanimura*, 222 F.3d at 139. The Third Circuit reasoned that "once the PACA trust is dissipated, it is almost impossible for a beneficiary to obtain recovery." *Id.* Thus, a plaintiff suffers irreparable harm when "dissipation [of a PACA trust] has commenced, but is still ongoing" or when the PACA trust has been "depleted and payment [is] not readily forthcoming or available." *Id.* at 139–41. Such financial instability can be demonstrated when NSF checks tendered by defendants are returned, or bounced, for insufficient funds. *See, e.g., Circus Fruits Wholesale Corp.*, 2017 WL 1397950, at *3 (finding irreparable harm satisfied where three (3) checks tendered by defendants bounced).

In light of the Third Circuit's opinion in *Tanimura*, numerous district courts in this Circuit have found irreparable harm and issued TROs without notice where defendants were dissipating PACA trust assets. *See, e.g., Ryeco*, 2023 WL 5822207, at *3 (issuing a TRO without notice where

5

two (2) checks tendered by defendants bounced and where defendants repeatedly broke promises to pay the amount owed and were allegedly working to secure a loan to pay the debt); *Frank M. Gargiulo & Son, Inc. v. Acai Cafe LLC*, No. 23-4018, 2023 WL 4933187, at *2 (D.N.J. Aug. 2, 2023) (issuing a TRO without notice where tendered checks bounced and defendants advised that no payment was forthcoming); *Agrosons LLC v. PHP Grp. LLC*, No. 22-6498, 2022 WL 16967703, at *1 (D.N.J. Nov. 16, 2022) (issuing a TRO without notice where tendered checks repeatedly bounced, and defendants were liquidating their assets).

In this case, Defendants have tendered three (3) checks for partial payment which have bounced, they have represented that they are unable to pay the amount due and owing, and they have ceased operations and represented that they are reorganizing. This is sufficient to demonstrate that Defendants are financially unstable, that the PACA trust assets are being dissipated, and Plaintiffs thus will suffer irreparable harm.

Third, issuing a TRO will not result in greater harm to Defendants than to Plaintiffs as Defendants "have no right to use the PACA Trust funds for any purpose other than to pay Plaintiff for the produce it received. To that end, the entry of temporary restraints serves that purpose without harm to any cognizable interest of the Defendants." *S. Katzman Produce, Inc. v. Depiero's Farm, Inc.*, No. 12-1384, 2012 WL 764235 at *1 (D.N.J. Mar. 7, 2012).

Finally, issuing a TRO is in the public interest because "failure to make payment for perishable agricultural commodities is the exact wrong PACA's statutory trust is meant to right." *Ryeco*, 2023 WL 5822207, at *3; *see also Spectrum Produce Distrib., Inc. v. Fresh Mktg., Inc.*, No. 11-6368, 2011 WL 13063669, at *2 (D.N.J. Nov. 1, 2011) ("Congress has expressed itself in unequivocal terms in PACA of the importance of protecting the interest of the produce of purveyors in these interstate transactions."); *Frank M. Gargiulo & Son*, 2023 WL 4933187, at *3

("[T]he public interest will be served as the PACA specifically expressed the importance of protecting the interests of produce suppliers.").

## IV. CONCLUSION & ORDER

For the reasons set forth above,

**IT IS** on this 20th day of March, 2024 at 12:36 p.m.,

**ORDERED** that Plaintiffs' Application for a Temporary Restraining Order Without Notice is **GRANTED**; and it is further

**ORDERED** that Plaintiffs **SHALL FILE AND SERVE** a subsequent Motion for a Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65(a) by March 27, 2024, at 12:00 p.m.; and it is further

**ORDERED** that Defendants **SHALL FILE AND SERVE** any response papers by March 29, 2024, at 12:00 p.m.; and it is further

**ORDERED** that Plaintiffs **SHALL FILE AND SERVE** any reply papers by April 1, 2024 at 12:00 p.m.; and it is further

**ORDERED** that a hearing will be held on April 2, 2024 at 2:00 p.m. in Trenton Courtroom 4E at which time Defendants **SHALL SHOW CAUSE** why the Court should not issue an Order under Rule 65(a) preliminarily enjoining the Defendants, their customers, agents, officers, subsidiaries, assigns, financial institutions and factors from alienating, dissipating, paying over or assigning any assets of Defendants Sickles Market or Sickles Provision, their subsidiaries or related companies, including, but not limited to, Sickles Management, except for payment to Plaintiffs, until further order of this Court or until Defendants pay Plaintiffs the aggregate sum of $298,710.94 by cashier's check or certified check ("the Preliminary Injunction Hearing"); and it is further

7

**ORDERED** that, pending the Preliminary Injunction Hearing, Defendants, their customers, agents, officers, subsidiaries, assigns, financial institutions and factors be, and hereby are, **TEMPORARILY RESTRAINED AND ENJOINED**, pursuant to Rule 65(b), from alienating, dissipating, paying over or assigning any assets of Sickles Market, Sickles Provisions, and/or Sickles Management, including without limitation their accounts receivable, and those of its subsidiaries or related companies, except for payment to Plaintiffs, until further order of this Court or until Defendants pay Plaintiffs the aggregate sum of $298,710.94, as set forth above, by cashiers' check or certified check ("the Temporary Restraints"); and it is further

**ORDERED** that Defendants may move to dissolve or modify the Temporary Restraints on two (2) days' advance notice to Plaintiffs and the Court; and it is further **ORDERED** that no security or bond shall be required under Rule 65(c) because it appears that Defendants presently hold $298,710.94 worth of Plaintiffs' assets; and it is further

**ORDERED** that Plaintiffs shall serve one copy each of this Order and the materials submitted in support thereof, together with the Summons and Complaint, upon Defendants by hand delivery and by overnight delivery service delivered to Defendants at 4 Heathcliff Road, Rumson, New Jersey 077 60-1204 on or before March 22, 2024, and that such service shall effectuate service of process of said documents as to all Defendants.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**