NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FARMLIND PRODUCE, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SICKLES MARKET, LLC, et al.,<br><br>Defendants. | Civil Action No. 24-3746 (RK) (RLS)<br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon a Motion for Default Judgment, ("MDJ," ECF No. 37), filed by Plaintiffs Farmlind Produce, LLC and Four Seasons Produce, Inc. (collectively, "Plaintiffs"). The Court has considered Plaintiffs' Motion and its accompanying submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiffs' Motion is **GRANTED**.

I.  **BACKGROUND**

   a.  **Statutory Background**

Congress enacted the Perishable Agricultural Commodities Act ("PACA") "to promote fair trading practices in the produce industry." *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 135 (3d Cir. 2000) (citation omitted). Under PACA, all "perishable agricultural commodities, inventories of food or other derivative products, and any receivables or proceeds from the sale of such commodities or products, are to be held in a non-segregated floating trust for the benefit of unpaid sellers." *Id.* at 136; *see also* 7 U.S.C. § 499e(c). A PACA trust "is created by

operation of law upon the purchase of such goods, and the produce buyer is the statutory trustee." *Tanimura*, 222 F.3d at 136. "To protect the assets of the trust, the unpaid supplier must give the trustee written notice of intent to preserve the trust within thirty calendar days after payment was due . . . Alternatively, the unpaid seller may provide notice of intent through its ordinary and usual billing or invoice statements." *Id.* (citing 7 U.S.C. § 499e(c)(4)).

A buyer or trustee violates PACA if it fails to maintain the PACA trust or fails to "make full payment promptly" to the seller or trust beneficiary. 7 U.S.C. § 499b(4). Buyers are also "required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities"—any act or omission inconsistent with this responsibility, including dissipation of trust assets, is prohibited. 7 C.F.R. § 46.46(d)(l). Dissipation of trust assets is defined as any act or omission that could result in the diversion of trust assets or the impairment of a seller's ability to recover money owed. *Id.* at § 46.46(b)(2).

  **b. Factual Background**

This case arises from the financial decline of the Sickles family. Robert Sickles, Jr. ("Mr. Sickles") owns multiple companies: Sickles Market, LLC ("Sickles Market"), Sickles Provisions, LLC ("Sickles Provisions"), and Sickles Management, Inc. ("Sickles Management") as well as TST Beverages, LLC d/b/a Bottles by Sickles ("TST Beverages") and AHS Realty, LLC ("AHS Realty"). (ECF No. 22-1 ("Second Amended Complaint" or "SAC") ¶ 4e; 14–15.) Plaintiffs are two companies engaged in the business of selling wholesale perishable agricultural commodities ("Produce") and are licensed as such under PACA. (SAC ¶ 3a–b.) Plaintiffs filed this action on March 18, 2024 to enforce a PACA trust against Mr. Sickles as well as Sickles Market, Sickles Provisions, and Sickles Management. (*See* "Compl.," ECF No. 1.) Sickles Market and Sickles

Provisions were also engaged in the business of buying and selling produce and were also licensed as such under PACA, while Sickles Management was engaged in the business of managing the operations and assets of Sickles Market and Sickles Provisions. (SAC ¶ 4a–c.) On March 25, 2024, Plaintiffs filed an Amended Complaint which added TST Beverages, which was engaged in operating a liquor store, and AHS Realty—the real estate holding company that owned the land upon which Sickles Market was located in Little Silver, New Jersey as well as an adjacent farm. ("FAC," ECF No. 6.") Mr. Sickles was a "principal, member, and/or officer" of Sickles Market, Sickles Provisions, Sickles Management, TST Beverages, and AHS Realty and occupied a position of control over the PACA trust assets allegedly belonging to Plaintiffs. (SAC ¶ 4e; *see also* FAC ¶ 4f.)[1]

Between October 2023 and March 2024, Plaintiffs "sold and delivered to Sickles Market, in interstate commerce, $375,960.473 worth of wholesale quantities of perishable agricultural commodities ("Produce") and other goods . . . ." (SAC ¶ 5.) In addition, between November 2023 and January 2024, Plaintiffs "sold and delivered to Sickles Provisions, in interstate commerce, $23,697.96 worth of Produce and other goods . . . ." (*Id.* ¶ 6.)

Defendants received and accepted the Produce totaling the aggregate amount of $398,945.94. (*Id.* ¶ 7.) Thus, Plaintiffs became beneficiaries of a statutory trust under PACA (the "PACA trust"), "which is designed to assure payment to Produce suppliers and which consists of all Produce and Produce-related assets, including all funds commingled with funds from other sources and all assets procured by such funds, in the possession or control of Sickles Market and Sickles Provisions." (*Id.*) Plaintiffs submitted invoices to Defendants providing notice of intent to

---

[1] On April 24, 2024, Plaintiffs filed a Second Amended Complaint, which added C. Rooney Produce, Co., Inc ("Rooney") as a third Plaintiff, (SAC ¶ 3c), and removed TST Beverages, but which contained otherwise identical claims as in the First Amended Complaint. Shortly thereafter, on May 17, 2024, Rooney voluntarily dismissed its claims without prejudice. (ECF Nos. 32, 33.)

preserve PACA trust benefits. (*Id.* ¶ 8.) In addition to the aggregate principal amount owed for the Produce, the invoices also required Sickles Market and Sickles Provisions to pay interest on unpaid balances at a rate of 1.5% per month, plus all attorney's fees, as additional "sums owing in connection with this transaction under the PACA trust." (*Id.* ¶ 10.) The deadlines to pay for the Produce have long since expired, but Sickles Market and Sickles Provisions have failed to pay the principal debt that remains due and owing despite repeated demands by Plaintiffs. (*Id.* ¶ 11.)

Plaintiffs allege that Mr. Sickles and Sickles Management are jointly and severally liable with Sickles Market and Sickles Provisions for their statutory, regulatory, and contractual violations based on the invoices and under PACA. (*Id.* ¶¶ 13–15.) As for AHS Realty, Plaintiffs contend that AHS Realty "received and retained PACA trust assets from Sickles Market and/or Sickles Provisions in violation of the PACA trust, thereby subjecting its assets to a constructive trust under PACA for the benefit of Plaintiffs." (*Id.* ¶ 16.)

### c. Procedural History

As noted above, Plaintiffs filed this case on March 18, 2024 against Mr. Sickles, Sickles Market, Sickles Provisions, and Sickles Management. (Compl.) That same day, Plaintiffs filed an Application for a Temporary Restraining Order Without Notice. ("TRO App.," ECF No. 1-4.) In it, Plaintiffs explained that Sickles Market had tendered three (3) Non-Sufficient Funds ("NSF") checks to Four Seasons, that both Sickles Market and Sickles Provisions had admitted their PACA trust debt due to Plaintiffs and the aggregate principal amount of that debt, and that both Sickles Market and Sickles Provisions had abruptly ceased operations and admitted that they lacked the funds to pay the debt due. (*Id.* at 2, 7, 15–16.) On March 20, 2024, the Court granted Plaintiffs' Application for a Temporary Restraining Order, which, *inter alia*, enjoined Defendants from "alienating, dissipating, paying over, or assigning any assets of Sickles Market, Sickles Provisions,

and/or Sickles Management, including without limitation their accounts receivable, and those of its subsidiaries or related companies, except for payment to Plaintiffs, until further order of this Court or until Defendants pay Plaintiffs the aggregate sum . . . ." (the "Temporary Restraints"). ("TRO," ECF No. 3 at 8.)

On March 21, 2024, Plaintiffs' attorney submitted a certification demonstrating that the Summons, Complaint, and the Court's Temporary Restraining Order, along with the materials submitted in support thereof, had been served on each Defendant by Federal Express Overnight Delivery and by hand delivery. (*See* ECF No. 5.) On March 25, 2024, as noted above, Plaintiffs filed an Amended Complaint which added TST Beverages and AHS Realty, (FAC), and on March 27, 2024, Plaintiffs moved for a Preliminary Injunction, requesting that the Court extend the Temporary Restraints and impose same on the additional Defendants, ("PI Mot.," ECF No. 7). On April 5, 2024, TST Beverages and AHS Realty entered an appearance in this matter and filed a Brief in Opposition to Plaintiffs' Motion for a Preliminary Injunction. (ECF Nos. 10–13.) The Court held a hearing on Plaintiffs' Motion on April 9, 2024. (ECF No. 15.) At the hearing, the parties agreed in principle to a consent order extending the Temporary Restraints and applying same to TST Beverages and AHS Realty, with certain exceptions. (ECF No. 17.)

However, the parties subsequently began to file letters on the docket indicating that the parties had been unable to agree upon the language of the consent order and asked that the hearing on the Motion for a Preliminary Injunction be rescheduled. (*See* ECF Nos. 16, 19, 20, 21, 23, 25, 26.) These letters also raised the possibility that Defendants would be initiating insolvency proceedings. (*Id.*) On April 24, 2024, Plaintiffs voluntarily dismissed TST Beverages due to TST Beverages having filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in proceedings captioned as *In re TST Beverages, LLC*, Case No. 24-14130, in the United States

Bankruptcy Court for the District of New Jersey. (ECF No. 22-2.) On May 10, 2024, Plaintiffs filed a Suggestion of Bankruptcy, which represented that, on May 9, 2024, AHS Realty and Mr. Sickles had also filed for Chapter 11 bankruptcy in the following proceedings: *In re AHS Realty, LLC*, Case No. 24-14779, and *In re Robert H. Sickles*, Case No. 24-14781. (ECF No. 29.) Accordingly, Plaintiffs requested that this action be stayed as to Defendants AHS Realty and Mr. Sickles. (*Id.*)

Thus, the only remaining active Defendants in this case are Sickles Market, Sickles Provisions, and Sickles Management (the "Sickles Corporate Defendants")—each of which were served with process on March 21, 2024, but none of which have appeared in this action. (ECF No. 5.) The claims against these Defendants are as follows: Count One – Failure to Pay Trust Funds under PACA, (SAC ¶¶ 17–19); Count Two – Failure to Pay Promptly under PACA, (*id.* ¶¶ 20–22); Count Three – Breach of Contract – Failure to Pay for Goods Sold as to Sickles Market and Sickles Provisions, (*id.* ¶¶ 23–26); Count Five – Affiliated Entity as to Sickles Management, (*id.* ¶¶ 32–34); and Count Seven – Interest and Attorney's Fees, (*id.* ¶¶ 44–47).

On May 10, 2024, Plaintiffs filed a Request for Entry of Default as to the Sickles Corporate Defendants. (ECF No. 31.)[2] The Clerk of Court entered the default. On May 20, 2024, Plaintiffs filed a declaration in further support of its still-pending Motion for Preliminary Injunction. (ECF No. 34.) Plaintiffs pointed out that the Sickles Corporate Defendants had not appeared in the action and had not opposed Plaintiffs' Motion, and thus asked the Court to treat the Motion as unopposed. (*Id.*) On May 21, 2024, the Court entered an Unopposed Order Entering a Preliminary Injunction against the Sickles Corporate Defendants, enjoining them or their "customers, agents, officers,

---

[2] Plaintiffs initially filed a "motion" for default, which was terminated because Plaintiffs had not first filed a "request" for entry of default. (ECF No. 30.) A few days later, Plaintiffs filed the proper "request" for entry of default. (ECF No. 31.)

6

subsidiaries, attorneys, assigns, financial institutions, and factors from alienating, dissipating, paying over or assigning any assets, including without limitation any accounts receivable, of the Sickles Corporate Defendants, and those of their subsidiaries or related companies, except for payment to Plaintiffs, until further order of this Court or until the Sickles Corporate Defendants pay Plaintiffs the aggregate sum [due to Plaintiffs], and to order the Sickles Corporate Defendants to turn over to Plaintiffs certain funds, documents, and other materials in their possession, custody, or control . . . ." (ECF No. 36.)

On June 7, 2024, Plaintiffs filed the present Motion for Default Judgment against the Sickles Corporate Defendants, which is now pending before the Court. (MDJ; *see also* ECF Nos. 38, 39.) The Sickles Corporate Defendants have not filed a brief in opposition or otherwise responded to Plaintiffs' Motion, which the Court now turns to.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 55 permits a party to apply for and the court to enter default judgment against a party that fails to plead or otherwise defend claims asserted against it. Fed. R. Civ. P. 55(b)(2). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits . . . .'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)). "Because the entry of a default judgment prevents the resolution of claims on the merits, '[the Third Circuit] does not favor entry of defaults and default judgments.'" *Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *2 (D.N.J. May 18, 2021) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

7

Before entering a default judgment pursuant to Rule 55(b), a court performs a thorough analysis of a plaintiff's claims and entitlement to relief. *First*, the defendant must have been properly served. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985). *Second*, the court must have subject matter jurisdiction over the dispute and personal jurisdiction over the parties. *See Mark IV Transp. & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103, 108 (3d Cir. 2017). *Third*, the complaint must sufficiently state a cause of action. *See Chanel, Inc.*, 558 F. Supp. 2d at 536 (citing *Directv, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)). *Fourth*, the court must weigh the three default judgment factors: (1) whether the party subject to the default has a meritorious defense, (2) whether the party seeking default would be prejudiced without it, and (3) whether the default resulted from the defendant's culpable conduct. *Tri-Union Seafoods, LLC v. Ecuatorianita Imp. & Exp. Corp*, No. 20-9537, 2021 WL 1541054, at *7 (D.N.J. Apr. 20, 2021) (citing *Days Inns Worldwide, Inc. v. Jinisha Inc.*, No. 14-6794, 2015 WL 4508413, at *2 (D.N.J. July 24, 2015)). *Finally*, the plaintiff must have proven damages. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

### III. DISCUSSION

#### a. PROPER SERVICE

A court may only enter default judgment against defendants who were properly served. *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (citing *Gold Kist*, 756 F.2d at 19). When located in the United States, an entity defendant, such as a corporation or LLC, may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). The plaintiff "bears the burden of proof" of demonstrating service was proper. *Grand Entm't Grp. v. Star Media Sales*, 988 F.2d 476, 488 (3d Cir. 1993) (citation omitted). The plaintiff can meet

this burden "by a preponderance of the evidence using affidavits, depositions, and oral testimony." *Mills v. Ethicon*, 406 F. Supp. 3d 363, 392 (D.N.J. 2019) (citation omitted).

On March 21, 2024, Plaintiffs submitted a certification demonstrating that the Summons and Complaint, along with all of the Temporary Restraining Order materials, had been served on each of the Sickles Corporate Defendants by Federal Express Overnight Delivery and by hand delivery. (*See* ECF No. 5). The certification contained the FedEx proof-of-delivery and an affidavit of service for each Sickles Corporate Defendant, demonstrating that each Summons and Complaint was served upon Tristan Sickles on March 21, 2024. (*Id.* at *10, *12, *14); *see Super 8 Worldwide, Inc. v. Kusum, LLC*, No. 13-5603, 2015 WL 7761061, at *3 (D.N.J. Dec. 1, 2015) (affidavits demonstrating that the summonses were returned executed establishes proper service). Accordingly, Plaintiffs have established by a preponderance of the evidence that the Sickles Corporate Defendants were properly served.

### b. JURISDICTION

The Court next turns to whether it may exercise subject matter jurisdiction over this case and personal jurisdiction over the parties. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, which provides that the district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." This action presents a federal question under Section 5(c)(5) of PACA, 7 U.S.C. §§ 499e(b) and 499e(c)(5). This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiffs' related breach of contract claim against Sickles Market and Sickles Provisions.

The Court may exercise personal jurisdiction over all three Sickles Corporate Defendants. Sickles Market and Sickles Provisions are New Jersey limited liability companies. (SAC ¶ 4a–b.) "[T]he citizenship of a limited liability company 'is determined by the citizenship of each of its

9

members.'" *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 348 (3d Cir. 2013) (quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010)). Mr. Sickles is a member of Sickles Market and Sickles Provisions and is a resident of New Jersey, thus empowering this Court to exercise personal jurisdiction over his limited liability companies. (*Id.* ¶ 4e.) Sickles Management is a New Jersey corporation. (*Id.* ¶ 4c). Thus, the Court also has personal jurisdiction over Sickles Management based on its place of incorporation. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

### c. SUFFICIENCY OF COMPLAINT

The third factor the Court must consider is "whether the moving party's complaint establishes a legitimate cause of action." *La. Counseling & Fam. Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 365 (D.N.J. 2008); *see also Animal Science Prods., Inc. v. China Nat'l Metals & Minerals Import & Export Corp.*, 596 F. Supp. 2d 842, 848 (D.N.J. 2008) ("A litigant's failure to state a claim upon which relief may be granted . . . prevents the presiding court from entering a default judgment.").

In Counts One and Two, Plaintiffs have brought claims for failure to make prompt payments for shipments of Produce under PACA. (SAC ¶¶ 17–22.) In Count Five, Plaintiffs allege that Sickles Management is "affiliated with and/or related to" Sickles Market and Sickles Provisions, rendering it liable for Sickles Market and Sickles Provisions' PACA violations. (*Id.* ¶¶ 32–34.) As noted above, to protect a trust under PACA, a produce seller must provide the buyer with written notice of its intent to preserve trust benefits—this requirement can be met through ordinary billing or invoice statements. *See Tanimura*, 222 F.3d at 136; 7 U.S.C. § 499e(c)(4). Thereafter, a buyer's failure to make prompt payments triggers civil liability under PACA. 7 U.S.C. § 499b(4); *see also Agri Exotic Trading, Inc. v. Patriot Fine Foods, LLC*, No. 22-4898,

2022 WL 16570625, at *2 (D.N.J. Nov. 1, 2022) (hereinafter "*Patriot*").[3] Plaintiffs have alleged that they, Sickles Market, and Sickles Provisions are all licensed dealers under PACA, (SAC ¶¶ 3–4; *see also* "Warhol Decl. ISO TRO App.," ECF No. 1-2 at *10–*14; "Lind Decl. ISO TRO App.," ECF No. 1-3 at *10–*14), and that Plaintiffs sold and delivered $375,960.473 worth of Produce to Sickles Market between October 2023 and March 2024 and $23,697.96 worth of Produce to Sickles Provisions between November 2023 and January 2024, (SAC ¶¶ 5–6). Plaintiffs further contend that upon receiving and accepting the produce, Plaintiffs became the beneficiaries in a statutory trust under PACA and that Plaintiffs timely preserved their interest in the PACA trust by delivering invoices containing the requisite statutory language. (*Id.* ¶¶ 7–8.) Finally, Plaintiffs allege that Sickles Management occupied a position of control over the PACA trust assets, which renders them jointly and severally liable for all debts due and owing by Sickles Market and Sickles Provisions. (*Id.* ¶¶ 14–15.) The Court finds that Plaintiffs have sufficiently pled PACA claims against the Sickles Corporate Defendants for failure to pay trust funds and to make full payment promptly. *See Patriot*, 2022 WL 16570625, at *3 (finding similar PACA allegations sufficient to grant a motion for default judgment).

The Court also finds that Plaintiffs have set forth a legally sufficient breach of contract claim against Sickles Market and Sickles Provisions. To establish a breach of contract under New Jersey law, Plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (internal citation omitted). Under New Jersey law, a contract for the sale of goods "may be made in any

---

[3] The Court refers to the *Agri Exotic Trading, Inc.* cases by the name of the defendants as this Opinion cites to multiple PACA cases in which Agri Exotic Trading, Inc. was the plaintiff.

manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." N.J. Stat. Ann. § 12A:2-204(1). Here, Plaintiffs allege that Sickles Market and Sickles Provisions received and accepted the Produce and signed invoices for same, forming a contract for the sale of the Produce. (*See* SAC ¶¶ 7, 9; *see also* Warhol Decl. ISO TRO App. at *19–*54, *60–*71 (demonstrating signed invoices for deliveries from Four Seasons); Lind Decl. ISO TRO App. at *21–*194 (demonstrating signed invoices for deliveries from Farmlind)); *see also Agri Exotic Trading, Inc. v. D Mart Rutherford LLC*, No. 21-17794, 2022 WL 180278, at *5 (D.N.J. Jan. 20, 2022) (hereinafter, "*D Mart Rutherford*") (finding a valid and enforceable contract where plaintiff sold and delivered produce to defendant who accepted and signed the invoices for same). Plaintiffs performed their obligations by delivering the Produce, which was accepted by Sickles Market and Sickles Provisions, and Sickles Market and Sickles Provisions breached the contract by failing to pay for the amount due and owing.

Similarly, in Count Seven, which pleads a claim for contractual interest and attorney's fees and costs, (SAC ¶¶ 44–47; *see also* "D. Fasset Decl. ISO MDJ," ECF No. 37-1 ¶¶ 5–18), Plaintiffs allege that under the terms of the invoices, Sickles Market and Sickles Provisions were required to pay interest on unpaid balances at a rate of 1.5% per month, plus attorneys' fees expended in connection with the transaction under the PACA trust. (*Id.* ¶ 10). This "theory of damages is straightforward and uncontroversial." *D Mart Rutherford*, 2022 WL 180278, at *5 (finding plaintiffs set forth legally sufficient breach of contract claim and explaining that damages based on defendant's failure to pay the principal amount plus interest and attorney's fees was "straightforward and uncontroversial"); *see also Rocheux Int'l of N.J., Inc. v. U.S. Merchants Fin. Grp., Inc.*, 741 F. Supp. 2d 651, 684–87 (D.N.J. 2010) (holding that a clause requiring buyer to pay attorneys' fee and interest on past due accounts, which was present in all invoices sent to buyer

after delivery of each shipment was an enforceable term of the parties' contracts). Moreover, the Third Circuit has made clear that a PACA beneficiary may recover interest and fees due contractually or otherwise "in connection" with the transaction that is the subject of a PACA trust claim. *Pac. Int'l Mktg., Inc. v. A & B Produce, Inc.*, 462 F.3d 279, 286 (3d Cir. 2006) (citing *Middle Mountain Land & Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220, 1222–23 (9th Cir. 2002) ("The plain meaning of the PACA statute's words 'in connection with' encompasses not only the price of the perishable agricultural commodities but also additional related expenses, including contractual rights to attorneys'[] fees and interest, in a PACA claim.")).

### d. DEFAULT JUDGMENT FACTORS

Next, the Court considers the three default judgment factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). The Court finds that each of the three factors weighs in favor of entering default judgment in this case.

First, in the absence of any responsive pleading, the Court's review of the Complaint reveals no meritorious defense open to the Sickles Corporate Defendants. *See Ramada Worldwide Inc. v. Courtney Hotels USA, LLC*, No. 11-896, 2012 WL 924385, at *5 (D.N.J. Mar. 19, 2012) ("assum[ing] that the Defendants have no litigable defenses available" because they "have not filed anything with the Court," "have offered no defense," and "the facts asserted in the complaint do not contain any information that could provide the basis for a meritorious defense"); *see also Rose Containerline, Inc. v. Omega Shipping Co.*, No. 10-4345, 2011 WL 1564637, at *3 (D.N.J. Apr. 25, 2011) (same); *Carpenters Health & Welfare Fund of Phila. v. NDK Gen. Contractors, Inc.*, No. 06-3283, 2007 WL 1018227, at *1 (E.D. Pa. Mar. 29, 2007) ("Defendant has filed no

responsive pleading and the record before the court does not reveal any 'litigable defense.' The court must therefore presume that defendant has none."). In fact, the Sickles Corporate Defendants have never disputed their PACA trust debts due and owing to Plaintiffs. (*See* Warhol Decl., ISO TRO App. ¶ 15; Lind Decl. ISO TRO App. ¶ 15.)

Second, Plaintiffs have been prejudiced by the Sickles Corporate Defendants' failure to appear, defend, or otherwise respond to the Complaint in this case because Plaintiffs have no other means of seeking relief from these Defendants. *See Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. Jul. 9, 2012) ("[Plaintiffs] will suffer prejudice if the Court does not enter default judgment as Plaintiff[s] [have] no other means of seeking damages for the harm caused by Defendant."); *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (find that a defendant's failure to answer prejudices the plaintiff).

Finally, the Court finds the Sickles Corporate Defendants responsible for their failure to appear in this litigation because "there is nothing before the Court to show that [their] failure to file an answer was not willfully negligent." *Teamsters Pension Fund of Phila. & Vicinity*, 2011 WL 4729023, at *4; *U.S. v. Cruz*, No. 20-3903, 2021 WL 1884862, at *2 (D.N.J. May 11, 2021) ("Defendants['] failure to answer or otherwise respond to the Complaint, without providing any reasonable explanation, permits the Court to draw an inference of culpability on its part."); *Prudential Ins. Co. of Am. v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) ("[T]here was nothing before the Court to suggest that anything other than [defendant's] willful negligence caused her failure to file an answer, and she was therefore culpable."). Indeed, there appears to be no question that the Sickles Corporate Defendants are aware of this action, especially as the attorney for Mr. Sickles filed a letter on the docket explaining the financial situation of the

Sickles family and their businesses and that they had been cooperating with counsel for the PACA creditors. (*See* ECF No. 21.) Accordingly, each of the three default judgment factors counsels in favor of entering default judgment against the Sickles Corporate Defendants.

### e. DAMAGES

Finding default judgment warranted, the Court turns to the issue of damages. As noted above, while the factual allegations of a complaint are taken as true on a motion for default judgment, a plaintiff must prove the amount of damages with certainty. *Comdyne*, 908 F.2d at 1149. In order to determine whether a plaintiff has sufficiently proven damages, Rule 55(b) permits the Court to "conduct such hearings or order such references as it deems necessary and proper." *Id.* (quoting Fed. R. Civ. P. 55(b)(2)). However, the Court is not required to conduct such hearings "as long as it ensures that there is a basis for the damages specified in the default judgment," *Trucking Emps. of North Jersey Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer, Inc.*, No. 08-2782, 2009 WL 3584358, at *3 (D.N.J. Oct. 27, 2009) (citation and quotation marks omitted), such as when "detailed affidavits and documentary evidence" have been submitted to support the plaintiff's claim for damages. *Doe v. Simone*, No. 12-5825, 2013 WL 3772532, at *2–*3 (D.N.J. July 17, 2013) (citation omitted); *see also Comdyne*, 908 F.2d 1142 at 1149 (citation omitted) (damages sought at default judgment should be for a "sum certain or for a sum which can by computation be made certain . . . .").

Here, Plaintiffs request that the Court enter judgment against the Sickles Corporate Defendants as follows:

> Farmlind is entitled to a judgment against all three Defendants, jointly and severally, under the PACA Claims in the aggregate principal amount of Farmlind's unpaid Produce sales to Sickles Market and Sickles Provisions of $213,218.94, plus contractual interest accrued through July 1, 2024, of $21,607.21, plus reasonable attorneys' fees and costs incurred through May 31, 2024, of $42,261.35, for a total judgment amount under the PACA Claims

> in favor of Farmlind and against Defendants, jointly and severally, of $277,087.53[;]
>
> Four Seasons is entitled to a judgment against all three Defendants, jointly and severally, under the PACA Claims in the aggregate principal amount of Four Seasons unpaid Produce sales to Sickles Market and Sickles Provisions of $85,492.00, plus contractual interest accrued through July 1, 2024, of $9,735.61, plus reasonable attorneys' fees and costs incurred through May 31, 2024, of $18,021.49, for a total judgment amount under the PACA Claims in favor of Four Seasons and against Defendants, jointly and severally, of $113,249.10[;]
>
> Four Seasons is also entitled to a separate judgment against Sickles Market under the Breach of Contract Claim in the principal amount of Four Seasons' unpaid non-Produce sales to Sickles Market of $4,729.86[;]
>
> Four Seasons is entitled to a separate judgment against Sickles Provisions under the Breach of Contract Claim in the principal amount of Four Seasons' unpaid non-Produce sales to Sickles Provisions of $712.89.

(MDJ at *6–*7.)

    The Court finds that Plaintiffs have submitted sufficient evidence to support their request, including the principal amount due and owing as well as the interest and attorney's fees and costs. Plaintiffs have attached their account statements for Sickles Market and Sickles Provisions, (Fasset Decl. ISO MDJ, Exs. 1, 2), and over two hundred pages of invoices for same, (Warhol Decl. ISO TRO App. at *19–*54, *60–*71; Lind Decl. ISO TRO App. at *21–*194). They have also submitted certifications from their attorneys explaining the calculation of the contractual interest due on the unpaid principal amounts owed to Plaintiffs. ("M.J. Fasset Decl. ISO MDJ," ECF No. 37-2, Exs. C–D.) Finally, Plaintiffs have submitted certifications from their attorneys containing detailed and itemized exhibits demonstrating attorney's fees and costs, including the tasks and hours of service performed, the experience levels and hourly billing rates of the attorneys, and the additional costs incurred, such as the costs of business records obtained and the costs incurred for

Lexis research. (D. Fasset Decl. ISO MDJ ¶¶ 8–10, Ex. 3; M.J. Fasset Decl. ISO MDJ ¶¶ 1–7, Exs. A, B.) Based on Plaintiffs' submissions, the Court finds that Plaintiffs have adequately established damages in this case, including attorney's fees and costs, which appear reasonable and proportionate. *See D Mart Rutherford*, 2022 WL 180278, at *5–*6 (finding similar evidence sufficient to demonstrate damages on a motion for default judgment in a PACA case).[4]

---

[4] Plaintiffs also request that the Court "authorize Plaintiffs' counsel to release from trust to Plaintiffs, in partial satisfaction of those judgments, the $45,642.42 in funds belonging to Defendants that Plaintiffs' counsel has received since entry of the preliminary injunction order on May 21, 2024. (MDJ at *6; *see also* ECF No. 36; D. Fasset Cert. ¶¶ 24–25.) On May 21, 2024, in its Unopposed Order Entering a Preliminary Injunction, the Court enjoined the Sickles Corporate Defendants' assets until further Order and ordered the Sickles Corporate Defendants to turn over all funds belonging to them or their subsidiaries or related companies, excluding TST Beverages and AHS Realty, to Plaintiffs' counsel for Plaintiffs' counsel to hold in trust pending further Order. (ECF No. 36.) Plaintiffs' counsel explained in a certification submitted to the Court that, since the Court's preliminary injunction order, a total of $45,642.42 in funds have been turned over and are being held in trust by Plaintiffs' counsel. (D. Fasset Cert. ¶¶ 24–25.) The Court hereby grants Plaintiffs' request that these funds be released to Plaintiffs.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Default Judgment, (ECF No. 37), is **GRANTED**, and the Court enters default judgment against the Sickles Corporate Defendants. An appropriate Order and Judgment accompanies this Memorandum Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: July 23, 2024